## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| KATIE MEDLEY ANDERSON, | ) | |
| | ) | |
|    Plaintiff, | ) | |
| | ) | CIVIL ACTION CASE NUMBER: |
| v. | ) | |
| | ) | 3:25-cv-00195 |
| HOMEWARD MORTGAGE, LLC, | ) | |
| | ) | |
|    Defendant. | ) | PLAINTIFF DEMANDS A TRIAL |
| | ) | BY STRUCK JURY |

## COMPLAINT

## <u>JURISDICTION AND VENUE</u>

1.    This is an employment discrimination action in which the Plaintiff, Katie

Medley Anderson, alleges that the Defendant, Homeward Mortgage, LLC,

violated Title VII of the Civil Rights Act of 1964, as amended by the

Pregnancy Discrimination Act ("PDA"), and the Family and Medical Leave

Act ("FMLA") when it terminated her employment.

2.    The jurisdiction of this court is invoked pursuant to 28 U.S.C. §§ 1331 and

1343, 28 U.S.C. §§ 2201 and 2202.

3.     Venue is proper because the Defendant employed the Plaintiff in Auburn, Alabama which is part of the Eastern Division of the Middle District of Alabama.

## **PARTIES**

4.     The Plaintiff, Katie Medley Anderson, is an adult resident of the State of Alabama.

5.     The Defendant, Homeward Mortgage, LLC ("Homeward"), is a home finance company that offers various forms of mortgages to consumers.

6.     Homeward is a foreign limited liability company organized in the State of Texas.

7.     Homeward's headquarters are in Austin, Texas.

8.     Homeward's website is https://www.homewardmortgage.com/

9.     Homeward operates with a remote workforce.

10.     Homeward manages its remote workforce from Homeward's headquarters in Austin, Texas.

11.     Upon information and belief, Homeward employed in excess of 175 employees in the United States in 2023.

12.     Anderson worked remotely for Homeward.

13.     Anderson performed work for Homeward in the State of Alabama.

14. As of the filing of this action, Homeward has not registered or qualified with the Alabama Secretary of State to do business in the State of Alabama.[1]

## ADMINISTRATIVE REMEDIES

15. Homeward terminated Anderson's employment on or about July 28, 2023.

16. On October 6, 2023, Anderson filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"). (Exhibit 1).

17. Anderson filed her Charge of Discrimination within 180 days of July 28, 2023.

18. On December 13, 2024, the EEOC issued a Determination and Notice of

---

[1] A search of the Alabama Secretary of State's business Entity Records for the Defendant using the word "Homeward" did not show the Defendant as having registered to do business in Alabama;



Rights. (Exhibit 2).

19.    Anderson filed this action within 90 days of December 13, 2024.

20.    Anderson timely initiated this action.

21.    Anderson  fulfilled all conditions precedent to the institution of this lawsuit.

## FACTUAL BACKGROUND

22.    Homeward hired Anderson on or about February 15, 2021.

23.    Homeward hired Anderson to work as a Disclosure Specialist.

24.    Homeward initially paid Anderson an annual salary of $55,000.

25.    A Disclosure Specialist at Homeward was responsible for preparation and
       delivery of mortgage disclosures throughout the lifecycle or a mortgage
       transaction.

26.    The Disclosure Specialist's qualifications included work experience within
       the mortgage industry (preferably within compliance), the ability to read and
       interpret a Loan Estimate, HUD-1, Closing Disclosure and 1033, knowledge
       of Ellie Mae Encompass, strong written and verbal communication skills,
       and the ability to thrive in a fast-paced, high production environment.

27.    When Homeward hired Anderson, it set her projected career goal as
       Manager, Disclosures Desk.

28.    On February 16, February 2022, Homeward issued Anderson's 2021 – End

of Year Review ("performance evaluation").

29.  The performance evaluation Homeward issued to Anderson in February

2022 rated her a 4/5 – Exceeds Expectations.

30.  The performance evaluation Homeward issued to Anderson in February

2022 included a remark that Anderson's "transition to managing the

Disclosures Team was swift and occurred during a period of tremendous

change and growth."[2]

31.  On or about January 27, 2023, Homeward promoted Anderson to Disclosure

Specialist Team Lead.

32.  Homeward paid Anderson an annual salary of $60,000 as a Disclosure

Specialist Team Lead.

33.  When Homeward made Anderson a Disclosure Specialist Team Lead, her

direct supervisor, Mike Olson, told Anderson she was on track to meet the

projected career goal of Manager, Disclosures Desk.

34.  Olson served as Homeward's Director of Operations from December 2022

through October 2024.

35.  Homeward conducted Anderson's 2022 Annual Review on January 27,

---

[2] The excerpt from the evaluation reads:

4.00 / 5.00 - Exceeds Expectations
Katie's transition to managing the Disclosures Team was swift and occurred during a period of tremendous change and growth, which I do not believe set her up for immediate success. I was not always able to spend as much time coaching and developing her, which likely played a role in her lacking confidence. In the last several months, however, I've seen tremendous strides made by Katie in terms of her confidence and ability to lead the Disclosures Team with minimal oversight. It is very clear that Katie is committed to, and excited about, her role on the Disclosures Team. As her knowledge and confidence continue to grow, there is no doubt that Katie will find tremendous success at Homeward.

**COMPLAINT**
*Anderson v. Homeward Mortgage, LLC*

2023.

36.     Homeward's 2022 Annual Review for Anderson included marks such as "strives for excellence," "outstanding," and "exceeds expectations."

37.     Olson commented to Anderson that she not only was on track to being a manager, but that she was essentially functioning as a manager.

38.     In a work chat between Olson and Anderson on March 1, 2022, he confirmed that current work conditions should not slow down Anderson transitioning to manager.[3]

---

[3]     The chat reads:



 **Katie Medley** 🖊 11:49 AM
Do we have any updates on how we are going to start implementing SLA's and KPI's? Are we waiting on something in Encompass?

 **Mike** 11:50 AM
We're waiting on Encompass and Mode to be mapped together so we can actually report off of fields in Encompass

 **Katie Medley** 🖊 11:50 AM
Okay, is this something that will slow down the process on me transitioning to manager?

 **Mike** 11:59 AM
It shouldn't be, since it is not in our control.  Just so you're aware, any upward movement in the company for me is intrinsically linked towards your upward movement, so we're perfectly aligned on desiring your promotion

 **Katie Medley** 🖊 12:07 PM
Yeah of course. I definitely understand that. I was looking through the goal sheet you provided me which I know says that not everything on there is something I can accomplish individually but I just wanted to see if there were anymore updates on it. I know we talked about wanting me to be more confident in handling the team and in meetings I just haven't had much of an opportunity to prove that yet since we have pushed the meetings back that we were having with Sarah. I am starting the QA process today but just wanted to make sure that all my ducks are in a row as of right now.

 **Mike** 12:08 PM
Nothing on that list jumps out to me as things you aren't actively working on and making improvements in, so from my seat, your ducks are in a row

 **Katie Medley** 🖊 12:10 PM
Okay awesome. thanks Mike!

39.    Olson and Anderson discussed potential manager positions into which
Anderson could move.

40.    In April 2023, Anderson disclosed to Homeward that she was pregnant.

41.    Anderson discussed with Homeward her need for FMLA leave related to her
pregnancy.

42.    Homeward sent Anderson a link to information concerning the FMLA.

43.    Anderson had difficulty accessing the FMLA information through the link
which Homeward sent to her.

44.    When Anderson informed Homeward of her difficulty in accessing the
FMLA information, Homeward indicated it would handle Anderson's
FMLA application for her.

45.    Homeward left Anderson with the impression that it would handle the
computer-based FMLA application process for her.

46.    When Anderson was approximately eight (8) months pregnant, she suffered
swelling and high blood pressure that caused her doctor to direct her to go to
the hospital.

47.    Anderson informed Homeward she had been hospitalized due to health
conditions related to her pregnancy.

48.    Anderson was hospitalized for approximately a week and delivered her child

early.

49. When Anderson was admitted to the hospital, she let Homeward know that she had to take FMLA maternity leave from work due to the complications related to her pregnancy.

50. Homeward responded to Anderson that she had to use accrued sick leave or personal time off because her FMLA maternity leave could not start until she gave birth.

51. Anderson used accrued sick leave until the day she gave birth.

52. Anderson gave birth on May 15, 2023.

53. Anderson communicated to Homeward Mortgage that she had given birth.

54. Anderson's return-to-work date from her FMLA maternity leave was in August 2023.

55. Anderson intended to return to work for the Respondent.

56. On July 28, 2023, Olson informed Anderson that Homeward was eliminating her job.

57. Upon information and belief, Anderson's position was the only one eliminated by Homeward in July and/or August 2023.

58. Olson informed Anderson that the company did not have another job for her.

59. Homeward did not offer Anderson the option of moving to another job.

_____
**COMPLAINT**
*Anderson v. Homeward Mortgage, LLC*
8

60. At the time Homeward terminated Anderson's employment, the company had several open positions to which it could have moved Anderson or given her the opportunity to apply.

61. Homeward's advertised open positions on Linked-In included, but were not limited to Mortgage Processing Manager, three Regional Sales Manager positions, and Corporate Accounting Manager.

62. Homeward offered Anderson a severance package contingent upon her agreeing to release all legal claims relating to her termination.

63. Anderson declined the severance package.

64. Upon information and belief, it is not Homeward's common practice to offer employees a severance package.

## COUNT I
## PREGNANCY DISCRIMINATION
## TITLE VII AS AMENDED BY
## THE PREGNANCY DISCIRMINATION ACT

65. For purposes of context, Anderson adopts and incorporates the facts set forth above.

66. This count challenges Homeward's decision to terminate Anderson's employment.

67. In 2022, Homeward employed 15 or more employees for 20 calendar weeks out of the year.

68.    In 2023, Homeward employed 15 or more employees for 20 calendar weeks out of the year.

69.    In 2024, Homeward employed 15 or more employees for 20 calendar weeks out of the year.

70.    Anderson disclosed to Homeward she was pregnant in April 2023.

71.    Anderson went on leave from work due to pregnancy-related complications in May 2023.

72.    Anderson gave birth on May 15, 2023.

73.    Anderson took maternity leave from work that was to extend through August 2023.

74.    In July 2023, Homeward made the decision to terminate Anderson's employment.

75.    Homeward made the decision to terminate Anderson's employment while she was on maternity leave.

76.    Anderson's pregnancy was a motivating factor in Homeward's decision to terminate her employment.

77.    Homeward's discriminatory conduct injured Anderson.

WHEREFORE, PREMISES CONSIDERED, Anderson requests this Court enter a judgment against Homeward Mortgage, LLC under Title VII of the Civil

Rights Act of 1964, as amended by the Pregnancy Discrimination Act, pursuant to

an Order by which this Court:

    a.  Awards backpay, inclusive of statutory interest;

    b.  Awards compensatory damages to be determined by the trier of fact;

    c.  Awards punitive damages to be determined by the trier of fact;

    d.  Awards nominal damages to be determined by the trier of fact;

    e.  Awards injunctive and equitable relief including, but not limited to,

       training, backpay, reinstatement and/or reasonable front pay, and

       modification of Anderson's personnel file(s);

    f.  Awards that relief which is fair, reasonable, and just;

    g.  Awards costs against Homeward Mortgage, LLC including a reasonable

       attorney's fee.

## COUNT II
## INTERFERENCE WITH RIGHT TO RETURN TO WORK
## FAMILY AND MEDICAL LEAVE ACT

78.    For purposes of context, Anderson adopts and incorporates the facts set forth

above.

79.    As of April 2023, Anderson had worked in excess of twelve months for

Homeward.

80.    As of April 2023, Anderson had worked over 1,250 hours for Homeward in

the preceding twelve months.

81.   Anderson worked remotely for Homeward.

82.   Upon information and belief, all of Homeward's employees who worked remotely received work assignments through Homeward's Austin, Texas headquarters.

83.   Upon information and belief, all of Homeward's employees who worked remotely ultimately reported to Homeward's Austin, Texas headquarters.

84.   Upon information and belief, Anderson's work assignments and mortgage disclosures on which she worked came to her through Homeward's headquarters in Austin, Texas.

85.   Anderson ultimately reported to Homeward's Austin, Texas headquarters.

86.   For purposes of the FMLA, Austin, Texas was Anderson's worksite.

87.   For purposes of the FMLA, Austin, Texas was every remote worker's worksite.

88.   Upon information and belief, Homeward had 50 or more employees on its payroll within a 75-mile radius of its Austin, Texas office.

89.   Upon information and belief, as of April and May 2023, Homeward employed 50 or more employees within a 75-mile radius of its Austin, Texas office.

90. Upon information and belief, as of April and May 2023, Homeward employed 50 or more remote workers whose worksite was Homeward's headquarters in Austin, Texas.

91. In April 2023, Anderson requested FMLA leave from Homeward for the upcoming birth of her child.

92. In May 2023, Anderson informed Homeward that she had been hospitalized due to pregnancy-related conditions.

93. In May 2023, Anderson informed Homeward that she gave birth to her child.

94. Homeward approved Anderson for FMLA through August 2023.

95. The FMLA secured Anderson's right to return to work to the same or equivalent job upon completion of her FMLA leave.

96. On or about July 28, 2023, Homeward informed Anderson it was terminating her employment.

97. By terminating Anderson's employment, Homeward interfered with Anderson's right to return to the same or equivalent position.

98. Homeward interfered with Anderson's rights as secured by the FMLA.

WHEREFORE, PREMISES CONSIDERED, Anderson requests this Court enter a judgment against Homeward Mortgage, LLC under the Family and Medical Leave Act, pursuant to an Order by which this Court:

a.  Awards backpay damages, inclusive of interest;

b.  Liquidated damages equal to backpay;

c.  Awards nominal damages;

d.  Awards injunctive and equitable relief including, but not limited to,

   training, backpay, reinstatement and/or reasonable front pay, and

   modification of Anderson's personnel file(s);

e.  Awards that relief which is fair, reasonable, and just;

f.  Awards costs against Homeward Mortgage, LLC including a reasonable

   attorney's fee.

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY.**

Respectfully submitted,

/s/ Heather Newsom Leonard
Heather Newsom Leonard
ATTORNEY FOR PLAINTIFF

OF COUNSEL:

HEATHER LEONARD, PC
2105 Devereux Circle, Suite 111
Birmingham, AL 35243
(205) 977-5421
Heather@HeatherLeonardPC.com

/s/ Johnathan K. Corley
Johnathan K. Corley
ATTORNEY FOR PLAINTIFF

OF COUNSEL:

WHITTELSEY & CORLEY, LLC
P.O. Box 106
Opelika, AL 36803-0106
(334) 745-7766
JCorley@wwp-law.com

**SERVE THE DEFENDANT VIA CERTIFIED MAIL:**

Homeward Mortgage, LLC
c/o Tim Heyl, CEO
1001 S. Capital of TX High Building I
Suite 100
Austin, TX 78746